USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: JUL 10 2008

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA               :

      -v-                                    :     FELONY
                                                   INFORMATION
DOUGLAS A. STEGER,                     :
                                              08 Cr. __ (___)
      Defendant.                       :

08 CRIM 630

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### COUNT ONE
(Conspiracy)

The United States Attorney charges:

### Background

1.     At all times relevant to this Information, DOUGLAS STEGER, the defendant, was a resident of Northfield, Illinois.

2.     From approximately 1989 until approximately late 2001, DOUGLAS STEGER, the defendant, owned and operated American Financial Capital Corporation (hereinafter "AmCap"), which was engaged in the business of raising money for hedge funds.

### Individual A and the HOMER Tax Shelter Transactions

3.     In or about the winter of 2001, DOUGLAS STEGER, the defendant, was introduced to co-conspirator "Individual A." At all times relevant to this Information, Individual A was an attorney and certified public accountant. From 1999 through early 2002, Individual A was employed by a national bank (hereinafter "Bank A") in its "Innovative Strategies Group" ("ISG"). From 2002 until approximately 2004, Individual A was the head of a consulting firm, whose primary

1



business was the promotion of tax shelter strategies.

4.  At various times relevant to this Information, members of Bank A's ISG were engaged in the design, marketing, and implementation of tax shelter transactions, including a transaction known as "Hedge Option Monetization of Economic Remainder" or "HOMER." In or about 2001, Individual A — together with other members of ISG, attorneys at the Jenkens & Gilchrist law firm (hereinafter "J&G"), and a foreign bank with United States headquarters in New York (hereinafter "Bank B") — implemented 36 HOMER tax shelter transactions for high net worth clients of Bank A and J&G.

5.  In order to participate in the HOMER tax shelter transactions, the Bank A and J&G clients were required to pay fees generally totaling 6%, or 600 basis points, of the tax loss that the clients were seeking to generate through their respective HOMER transactions. The fees went to Bank A, J&G, Bank B, and an additional participant in the HOMER transactions, who was a childhood friend of Individual A.

6.  As part of the their efforts to design, market, and implement HOMER transactions, members of Bank A's ISG and J&G agreed to pay referral fees to third parties who referred a client or clients who ultimately entered into a HOMER transaction. Generally, the referral fees were paid after the referring third parties sent invoices to J&G, leading J&G to pay the fees to the third parties based on the amounts stated in the invoices. When a referral fee was paid in connection with a particular HOMER transaction to a third party purportedly referring a client to Bank A, it served to reduce the total fee that Bank A would otherwise be paid in that transaction. Pursuant to Bank A's code of conduct for employees and the duty of honest services owed by ISG members to Bank A, ISG members were not permitted to personally receive or accept referral or

third-party fees, either directly or indirectly, in connection with the sale and implementation of the HOMER tax shelter transactions or any other ISG transaction.

### The Conspiracy

7.   DOUGLAS STEGER, the defendant, together with Individual A, and others known and unknown to the grand jury, participated in a scheme to defraud the Internal Revenue Service by preparing and submitting, and causing to be prepared and submitted, to J&G invoices that falsely represented that third party referral services had been provided in connection with certain of Bank A's HOMER transaction whereas, in truth and fact, no referral services had been provided. After receiving the referral fees pursuant to the submission of the bogus invoices, STEGER and the others, at the direction of Individual A, transferred most of the referral fee funds to Individual A, retaining a portion for themselves. Thereafter, STEGER, Individual A, and others failed accurately to report and pay taxes on the receipt of these funds.

### Statutory Allegations

8.   From in or about late 2001 until at least on or about February 15, 2004, in the Northern District of Illinois and elsewhere, DOUGLAS STEGER, the defendant, together with co-conspirator Individual A, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate, and agree together and with others to defraud the United States and an agency thereof, to wit, the Internal Revenue Service ("IRS") of the United States Department of Treasury, and to commit offenses against the United States, to wit, violations of Title 26, United States Code, Sections 7201, 7206(1), and 7206(2).

### Objects of the Conspiracy

9.   It was a part and object of the conspiracy that, from in or about late 2001

through in or about 2004, DOUGLAS STEGER, the defendant, Individual A, and others, unlawfully, willfully, and knowingly would and did defraud the United States of America and an agency thereof, to wit, the IRS, by impeding, impairing, defeating, and obstructing the lawful governmental functions of the IRS in the ascertainment, evaluation, assessment, and collection of income taxes.

10. It was a further part and object of the conspiracy that, from in or about late 2001 through in or about 2004, DOUGLAS STEGER, the defendant, Individual A, and others, unlawfully, willfully, and knowingly, would and did attempt to evade and defeat a substantial part of the income taxes due and owing by STEGER, Individual A, and others, in violation of Title 26, United States Code, Section 7201.

11. It was a further part and object of the conspiracy that, from in or about late 2001 through in on or about 2004, DOUGLAS STEGER, the defendant, Individual A, and others, unlawfully, willfully, and knowingly, would and did make and subscribe U. S. Individual Income Tax Returns, which returns contained and were verified by written declarations that they were made under the penalties of perjury, which returns were filed with the IRS, and which STEGER and others did not believe to be true and correct as to every material matter, in violation of Title 26, United States Code, Section 7206(1).

12. It was a further part and an object of the conspiracy that, from in or about late 2001 through in or about 2004, DOUGLAS STEGER, the defendant, Individual A, and others, unlawfully, willfully, and knowingly would and did aid and assist in, and procure, counsel, and advise the preparation and presentation under, and in connection with any matter arising under the internal revenue laws, of certain U.S. income tax returns for various years from 2001 through 2003, which were fraudulent and false as to material matters, in violation of Title 26, United States Code,

Section 7206(2).

## Means and Methods of the Conspiracy

13. Among the means and methods used by DOUGLAS STEGER, the defendant, Individual A, and their co-conspirators, to achieve the objects of the conspiracy were the following:

a. In or about December 2001, Individual A contacted DOUGLAS STEGER, the defendant, and suggested that STEGER prepare and submit to J&G two false and fraudulent invoices, seeking payment from J&G for referral fees on two unrelated HOMER clients ("Client A" and "Client B," respectively) for whom referral fees would not otherwise have been paid by Bank A. Despite the fact that he did not refer either Client A or Client B to Bank A and was not otherwise entitled to referral fees in connection with those clients, STEGER agreed to send the fraudulent invoices. Accordingly, pursuant to instructions provided by Individual A and unbeknownst to the two HOMER clients, STEGER prepared two invoices — in the respective amounts of $50,000, and $31,500, totaling $81,500 — that falsely and fraudulently represented that STEGER was entitled to referral fees in connection with Client A and Client B's HOMER tax shelter transactions, and sent the invoices to J&G's offices in Chicago. STEGER thereby caused J&G to pay the invoices with two wire transfers, from Dallas, Texas, to Chicago, Illinois, in the respective amounts of $50,000 and $31,500, to STEGER's AmCap bank account, which STEGER thereafter transferred to Individual A via a cashier's check in the amount of $81,500.

b. In or about early 2002, DOUGLAS STEGER, the defendant, was enlisted by Individual A to arrange and receive a transfer of $920,000 in proceeds from a second set of bogus referral fee invoices that had previously been submitted to J&G by another associate of Individual A (hereinafter "Individual B") for the purported referral of two HOMER clients, Clients C and D,

to Bank A. Towards that end, Individual A caused STEGER to hire an attorney to contact Individual B to arrange the transfer of the $920,000 to STEGER's AmCap bank account at North Shore Community Bank, Wilmette, Illinois, which transfer occurred on or about January 15, 2002. In truth and fact, neither STEGER, Individual A, nor Individual B were entitled to any referral fees for Client C or Client D.

    c.  In or about early 2002, on the instructions of Individual A, DOUGLAS STEGER, the defendant, disbursed the majority of the $920,000 in proceeds to Individual A, and to others at Individual A's direction, in a manner designed to conceal Individual A's receipt of taxable income.

    d.  On or about October 15, 2003, Individual A filed with the IRS a false U.S. Individual Income Tax Return, Form 1040, for the tax year 2002, which tax return failed to report as income his portion of the ill-gotten referral fee proceeds, amounting to more than $700,000, and which understated his true taxes due and owing by (i) failing to report the taxes due on bogus referral fee income, and by (ii) deducting phony losses created through the use of a fraudulent tax shelter transaction to offset reported income.

    e.  In or about February 2004, DOUGLAS STEGER, the defendant, on the instructions and with the assistance of Individual A, filed a joint U.S. Individual Income Tax Return, Form 1040, for the tax year 2002, on which STEGER falsely and fraudulently over-reported his income by including, as his income, the full amount of the $920,000 in proceeds received from Individual B, notwithstanding the fact that STEGER was a conduit for Individual A who ultimately received over $700,000 of those proceeds. Further, on the instructions of and with the assistance of Individual A, STEGER employed a tax shelter transaction on his 2002 individual tax return to create

false and fraudulent losses to offset the $920,000 in fraudulently-obtained referral fee income. In addition, Individual A instructed STEGER to make false and fraudulent statements about the receipt of the referral fees if asked about them.

### Overt Acts

14.   The following overt acts, among others, were committed, and caused to be committed, in the Northern District of Illinois and elsewhere, by DOUGLAS STEGER, the defendant, Individual A, and others in furtherance of the conspiracy and to effect its objects:

a.   On or about December 28, 2001, DOUGLAS STEGER faxed the two invoices for Clients A and B — reciting purported "services rendered" — from his home in Northfield, Illinois to J&G's Offices in Chicago, Illinois, causing J&G on or about December 31, 2001, to make two wire transfers in the amounts of $50,000 and $31,500 to STEGER's account in the name of AmCap at North Shore Community Bank, Wilmette, Illinois.

b.   On or about December 31, 2001, pursuant to a discussion with Individual A, DOUGLAS STEGER issued from his AmCap account a check payable to cash in the amount of $81,500, and therewith purchased a cashier's check for $81,500 made payable to Individual A. STEGER subsequently provided said cashier's check to Individual A, which check was deposited on or about January 7, 2002, into a bank account held in the name of Individual A at Hibernia National Bank, New Orleans, Louisiana.

c.   On or about January 15, 2002, DOUGLAS STEGER received a $920,000 wire transfer into his AmCap bank account at North Shore Community Bank from an account under the control of Individual B at Bank of America, San Francisco, California.

d.   On or about January 25, 2002, DOUGLAS STEGER wrote a check for

7

$88,500 made payable to the father of Individual A, which check was deposited into the bank account of Individual A at Hibernia Bank, New Orleans, Louisiana.

   e. On or about February 18, 2002, DOUGLAS STEGER purchased a cashier's check for $620,000 with funds from his AmCap bank account, which he deposited into his personal bank account at Glenview State Bank, Glenview, Illinois.

   f. On or about February 25, 2002, on the instructions of Individual A, DOUGLAS STEGER wrote a check payable to Individual A for $600,000 from his personal bank account at Glenview State Bank, falsely describing the payment as a "personal loan" on the memo line of the check.

   g. On or about February 26 and 27, 2002, on the instructions of Individual A, DOUGLAS STEGER withdrew $9,000 in cash on each of the aforesaid days from his AmCap bank account and gave the $18,000 in cash to Individual A for use during a Hawaiian vacation Individual A was then about to take.

   h. On or about October 15, 2003, Individual A filed a false and fraudulent U.S. Individual Income Tax Return, Form 1040, for the calendar year 2002, on which Individual A failed to report as income over $700,000 in ill-gotten referral fees, and reported phony losses of $1,201,186 in order to eliminate the taxes on Individual A's reported income.

   i. On or about February 15, 2004, on the instructions and with the assistance of Individual A, DOUGLAS STEGER filed a false and fraudulent joint U.S. Individual Income Tax Return, Form 1040, for the calendar year 2002, (i) on which he reported the full amount of the $920,000 transferred to him as income, when, as STEGER well knew, over $700,000 was income not to him but to Individual A, and (ii) on which he deducted phony losses of $908,999 to eliminate

the taxes on STEGER's income, including the reported $920,000.

(Title 18, United States Code, Section 371.)

### COUNT TWO
(Subscribing to False and Fraudulent
U.S. Income Tax Returns)

The United States Attorney further charges:

15. The allegations set forth in Paragraphs 1-6 and 13 of this Information are repeated, realleged, and incorporated by reference as though fully set forth herein.

16. On or about February 6, 2004, within the Northern District of Illinois, DOUGLAS A. STEGER, the defendant, did unlawfully, willfully, and knowingly make and subscribe a false and fraudulent joint U.S. Individual Income Tax Return, Form 1040, for the calendar year ending December 31, 2002, which was verified by the defendant's written declaration that it was made under the penalties of perjury and was filed with the IRS on or about February 15, 2004, which return STEGER did not believe to be true and correct as to every material matter, in that (a) STEGER reported as income on Line 17 over $700,000 in bogus referral fee income that was actually the income of Individual A, and (b) STEGER deducted false and fraudulent losses of $908,999 on Line 14, created by STEGER's participation in a fraudulent tax shelter strategy, when as STEGER well knew at the time the return was prepared and filed with the IRS he had not earned that gross income and did not have such deductible losses.

(Title 26, United States Code, Section 7206(1)).

*[signature]*
MICHAEL J. GARCIA
United States Attorney

9

7/10/08 - Deft. Steger present with attorney Thomas K. McQueen, Esq. For the Gov't: Stanley Okula / Nanette Davis, pres. and Court Reporter: Linda Fisher, present. Deft. Steger waived Indictment and filed a Consent to Proceed before a United States Magistrate Judge on a Felony Allocution referred by Judge Marrero. Deft. Steger entered a guilty to Count 1 and Count 2 of the Information. The Court recommends that Judge Marrero accept the guilty plea to Count 1 and Count 2. PSI Ordered. The parties must contact Judge Marrero Chambers to schedule a sentencing date. Deft released ROR.

Eaton, J. U.S.M.J.